IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JOSEPH COCCHINI, | ) |
| *Plaintiff*, | ) |
| -vs- | ) |
| | ) Case No. _____ |
| THE CITY OF FRANKLIN, TENNESSEE; | ) |
| | ) **JURY DEMAND** |
| *Defendant*. | ) **COMPLAINT FOR** |
| | ) **CIVIL RIGHTS VIOLATION** |
| | ) **42 U.S.C § 1983** |

# C O M P L A I N T

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."

*-- Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 828 (1995).

COMES NOW THE PLAINTIFF, JOSEPH COCCHINI, and sues the Defendant, THE CITY OF FRANKLIN, TENNESSEE, and would state as follows:

## I.
## Introduction

1. Joseph Cocchini brings this action against the City of Franklin, Tennessee pursuant to 42 U.S.C. § 1983, based on its policy, practice, custom and usage under color of state law of abridging and restricting the constitutionally protected rights of free speech and free exercise of religion at The Park at Harlinsdale Farm in Franklin, Tennessee, a city owned park, based on the content and viewpoint expressed.

2. Specifically, on June 3, 2023, the Plaintiff attended the Franklin Pride Festival at The Park at Harlinsdale Farm located at 239 Franklin Road, Franklin, Tennessee, an event that was

open to the public. No admission fee was charged for this event.

3. Mr. Cocchini entered this public, city owned forum for the sole purpose of engaging in peaceful assembly, prayer and religious speech.

4. The Defendant curtailed the Plaintiff's speech activity, by placing him under arrest and physically removing him from the public forum and criminally prosecuting him for the offense of criminal trespass under Tenn. Code Ann. § 39-14-405.

5. The Defendant's arrest of Mr. Cocchini was carried out pursuant to an official policy or practice of the Franklin City Police Department that was in effect at the time. Specifically, the arresting officers on duty at the Franklin Pride Event had been previously "briefed" by their superiors on the morning of June 3, 2023, before the event began that day, to arrest and remove any individual whom the event coordinators of Franklin Pride advised them to remove from the city park.

6. Plaintiff alleges that his arrest and removal from this public was instigated because of the religious views concerning marriage and human sexuality he expressed, and thus constitute content and viewpoint-based discrimination in violation of the Free Speech Clause of the First Amendment.

7. The Plaintiff seeks compensatory damages, declaratory relief and statutory attorney's fees and costs against the City of Franklin, Tennessee.

## II.
## Jurisdiction and Venue

8. This case arises under the Constitution of the United States. The Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the case presents substantial federal questions concerning a deprivation of constitutional rights, see 42 U.S.C. § 1983, and under 28 U.S.C. § 1343, as Joseph Cocchini challenges the Defendant's deprivation of his constitutional rights under color of state

law.

9. Venue is proper in this federal district because all of the relevant facts surrounding the Defendants constitutional violations occurred in Franklin, Tennessee.

### III.
### Parties

10. Joseph Cocchini is an adult citizen and resident of the State of Tennessee. He resides in Rutherford County, Tennessee.

11. The City of Franklin, Tennessee is a local body politic and exists under, and by virtue of, the laws of the State of Tennessee. The Defendant may likewise be served through its City Mayor, Ken Moore, at 109 3rd Avenue South, Franklin, Tennessee 37064.

### IV.
### Statement of Facts

12. Joseph Cocchini is a member of an *ad hoc* group of fellow Christian evangelists called Nashville Evangelists.

13. Nashville Evangelists consists of a group of men who collaborate through the use of a social media application called "Signal App" to engage in peaceful, religious expression and ministry outreach at various events and locations throughout the year. The Plaintiff has personally participated in many outreach efforts at various festivals throughout middle Tennessee that were organized through Nashville Evangelists group using the Signal App.

14. When John Coble, a fellow member of the Nashville Evangelist group, posted his intent to attend the Franklin Pride event at The Park at Harlinsdale Farm on June 3, 2023, the Plaintiff and several other members all responded and agreed to also attend this event seeing it as another opportunity to peacefully share the gospel of Jesus Christ at a public gathering.

15. Franklin Pride TN is a Tennessee non-profit corporation that was incorporated on July

13, 2021. Its mission, as stated on its Internet website, is as follows:

> The mission of Franklin Pride TN is to educate, inform and foster community that brings together LGBTQIA+ people and their allies in a social, non-threatening and empowering setting to uplift, educate and present positive images that help maintain a healthy, productive and visionary community in Williamson County and surrounding areas and such other purposes that the board may authorize from time to time that are consistent with the requirements of Section 501(c)(3) Code. This purpose may be realized through the production of one or more annual events designed to celebrate pride in LGBTQIA+ individuals in a safe setting where all participants experience equality and acceptance.

16. At approximately noon on June 3, 2023, Mr. Cocchini met with several other fellow evangelists from Nashville Evangelist group in the parking lot of the Factory, which is located across the street from the Park at Harlinsdale Farm.

17. The evangelist group spent approximately an hour in the parking lot of the Factory waiting and quietly praying. Mr. Cocchini mixed with several spectators who had also gathered at the Factory that day and handed out a few gospel tracts to those who would accept them.

18. At approximately 1:00 p.m. the evangelist group made their way to the festival.

19. After they arrived at the Park, the men elected to enter in groups of two. Mr. Cocchini paired with a gentleman named Ben Gonzales.

20. In the parking lot, on the way to the entrance of the festival, the Plaintiff and his fellow evangelist group members happened upon two other men who were affiliated with Nashville Evangelists. All of the men paused a moment to peacefully pray.

21. They then made their way to the welcome tent. The Plaintiff was scanned with a metal detecting wand and received a visitor wristband.

22. Mr. Cocchini purposefully read the Rules and Policies posted at the event concerning any prohibited activities such as outside alcoholic beverages, weapons or disorderly or

*Complaint - 4*

Case 3:23-cv-01185    Document 1    Filed 11/10/23    Page 4 of 17 PageID #: 4

threatening conduct, as he was determined not to violate any of these the rules or policies.

23. At the time he entered the Park, Mr. Cocchini was wearing a t-shirt with the message: "Jesus Changed My Life. Ask Me How".

24. After entering the festival, Mr. Cocchini and Mr. Gonzales' first encounter was with a festival booth attendant whom they recognized and knew only by his first name, Bill, working a booth for a group called Americans United. They engaged in cordial and friendly conversation with this festival booth attendant; Bill gave Mr. Gonzales an Americans United business card, and Mr. Gonzales gave him a gospel tract in exchange.

25. The Plaintiff and Mr. Gonzales then approached a food vendor called "Kookie Now by Donna", to purchase two bottled waters. As the Plaintiff approached the vendor, he recognized the woman attending it, and politely said to her "I know you!" He reminded her that they had met at the Pagan Pride Festival some years earlier, and that he had purchased some cookies for his daughter. The vendor remembered Mr. Cocchini and smiled affirmatively. The Plaintiff purchased the botted waters and said to her as he left "God Bless you!"

26. After that, the Plaintiff and Mr. Gonzales proceeded to meander about the festival in a peaceful manner stopping at various vendor booths and engaging in polite conversation with those whom they encountered.

27. Eventually, they came to a booth sponsored by the Glendale United Methodist Church. The Church displayed a sign that read:

> You Are Welcome Here. No matter: where you have come from or where you are going. What you believe or what you may doubt. What you are feeling or just not feeling. What you have or don't have. And no matter the color of your skin. Who you love or how you identify.

28. The Plaintiff was reading the smaller print on the "You are Welcome Here" sign, when

he was approached by a booth attendant, a woman with rainbow make-up who asked if he had any questions.

29. The Plaintiff responded "yes, are you a Christian?" The woman replied "yes, I am."

30. The Plaintiff then quietly and politely inquired if she could share with him her understanding of the gospel, so that he could better understand what she believed. The woman appeared confused by the question, at the same time another woman approached, the second woman was wearing a t-shirt indicating that she was a pastor. The Plaintiff assumed she was a pastor of Glendale United Methodist Church.

31. The Plaintiff then quietly began to share his Christian testimony with both women and entered into a cordial, seemingly welcome conversation with them on the subject of religion.

32. During this brief conversation, a group of approximately four, armed City of Franklin police officers gathered behind Mr. Cocchini. He was unaware of their presence until one of the officers got his attention, and instructed both he and Mr. Gonzales to leave the Park at once.

33. The Plaintiff then asked if had broken any law. The officers responded "no".

34. Franklin Officer Kevin Spry told the Plaintiff that they were asking him to leave because the event coordinator asked that he be removed.

35. Mr. Cocchini asked the officers whether he was on publicly owned property, and one of the officers falsely responded that the park was normally public property, but that it was \now private property because Franklin Pride had "rented" out the Park.

36. The Plaintiff asked again what he had done wrong and why he was being ordered to leave. Officer Spry responded that the "discussion was over". He stated: "I am going to tell you one more time to either walk with us to leave or else you are going to be arrested."

37. The Plaintiff asked for what offense he was being arrested. Officer Spry reiterated that

he was "not going down this road with [him] anymore. I'm going to tell you one more time to leave or else I am going to arrest you. Are you going to leave or am I going to have to arrest you?"

38. When the Plaintiff quietly refused to leave, he was ordered to place his hands behind his back, was handcuffed and placed under arrest. He was taken by police squad car to the City of Franklin Police Department where he was booked and detained on a charge of criminal trespass, a Class C Misdemeanor.

39. Once incarcerated, Mr. Cocchini was held under a $500.00 bond. His wife, Sarah, who pregnant at the time, came to post the necessary bond for his release.

40. A preliminary hearing was conducted on November 7, 2023, before the Honorable M.T. Taylor, Judge of the General Sessions Court of Williamson County, Tennessee.

41. At this preliminary hearing the State called as its sole witness the arresting officer, Kevin Spry. Officer Spry testified that on the morning of June 3, 2023, he and several other officers attended a "briefing" where they were instructed regarding their role in providing security at the Franklin Pride event.

42. Officer Spry testified that he and his fellow officers were operating as on-duty officers for the City of Franklin, and would remain on the city's payroll, but were "assigned" to the Franklin Pride Festival to patrol the event and maintain security.

43. In addition, Officer Spry testified that he was instructed by his superiors that while the Park was normally considered public property, because it had been "rented out" by Franklin Pride, it was to be treated as though it was "private property" throughout the course of this event. The officers were further advised that if Franklin Pride wanted an individual removed from the event "for any reason", then they were obliged to enforce this request.

44. Officer Spry further testified that when he first approached Mr. Cocchini on the date of his arrest, he had not observed him engage in any type of criminal or wrongful conduct. Specifically, he testified that Mr. Cocchini was respectful at all time. He confirmed that he had not engaged in any disorderly conduct, had not abused any alcohol or other substance, had no weapon in his possession, and had not violated any of the posted rules of conduct for the event. Officer Spry testified under oath that the only reason he placed Mr. Cocchini under arrest was because the event coordinator told him that they wanted Mr. Cocchini removed from the park.

45. At the conclusion of the State's proof at the preliminary hearing on November 7, 2023, Mr. Cocchini moved the court to dismiss the criminal warrant. Judge Taylor agreed that there had been absolutely no showing of probable cause that any crime had been committed, and dismissed the criminal trespass warrant.

**The Franklin Pride Festival**

46. On January 16, 2023, Robert McNamra, the Fundraising Chair and Advisor to Executive Committee, of Franklin Pride, filed a Special Event Permit Application with the City of Franklin.

47. The Application was for Franklin Pride TN outdoor festival, to be held at Park at Harlinsdale Farm, on June 3, 2023, from 12:00 p.m. to 6:00 p.m.

48. The "DETAILED description of event" on No. 8 of the Application stated:

> The mission of Franklin Pride TN is to educate, inform and foster community that brings together LGBTQIA+ people and their allies in a social, non-threatening and empowering setting to uplift, educate and present positive images that help maintain a healthy, productive and visionary community in Williamson County and surrounding areas and such other purposes that the board may authorize from time to time that are consistent with requirements of Section 501(c)(3) Code. This purpose may be realized through the production of one or more annual events designed to celebrate pride in LGBTQIA+ individuals in a safe setting where all participants experience equality and acceptance. Franklin Pride is a free one-day family friendly festival with food trucks, two stages of live music/entertainment, vendor booths, nonprofit booths,

*Complaint - 8*

Case 3:23-cv-01185   Document 1   Filed 11/10/23   Page 8 of 17 PageID #: 8

a youth activity and a teen activity area, picnic area, and a beer tent (21 and up). There will not be a drag show in the park. We will rent the entire park so anyone entering the park on June 3 will enter knowing they are attending Franklin Pride.

49. The event was listed on the Application as a free event and open to the public at large.

50. On April 8, 2023, Franklin Pride posted a video to Instagram. In that video, Clayton Klutts, President of Franklin Pride, states: "We do not allow anyone to proselytize for any reason their religion, their politics, their lifestyle."

51. This prohibition on constitutionally-protected free speech at this city-owned park was effectively enforced by Franklin Pride with armed officers from City of Franklin Police Department.

52. Officer Spry confirmed this point at the preliminary hearing. He testified that he had "removed several individuals" from the park during the event that day solely because the event coordinator wanted them removed. Plaintiff alleges that none of these individuals who were removed by police escort from the property during the Franklin Pride event had committed any criminal offense, but instead were removed solely on the basis of their peaceful expression of certain viewpoints that Franklin Pride found objectionable.

53. In another segment of the Franklin Pride video, Sandra Morton, the programming and entertainment board member, states: "We do require unconditional acceptance of the LGBTQ person."

54. Franklin Pride posted the following "Rules and Policies" at Hollinsdale Farm Park on the day of the event:

- All Attendees will be provided with a Free Wristband upon entering the Festival Area. This wristband will signify that you agree to adhere to all of our Rules and Policies. Those under age 3 can receive an ink stamp. Attendees must wear a wristband at all times, or you will be asked to leave the Festival. Wristbands will be available at the Welcome Tent.

- Bags will be searched upon entry to the Festival. We encourage small and or clear bags.

- We strongly recommend that anyone age 13 and under are accompanied by an adult.

- Dogs on leash are welcome at the Festival.

- Attire appropriate for a family event is required.

- Alcohol Rules

    - No underage Drinking is Permitted.
    - No outside alcoholic beverages are permitted.
    - Over 21 wristbands will be available at the Welcome Tent and the Beer Tent.
    - Drink tickets will be for sale at the Welcome Tent and the Beer Tent.
    - Persons will not be allowed into the Festival if they are intoxicated or pose a threat to themselves or others.
    - Please drink responsibly.

- Lost Child Station

    - The Lost Child Station will be at the Welcome Tent.

- Additional Rules

    - No fighting or threatening behavior, any person found fighting will be ejected from the Festival.
    - No disorderly or disruptive behavior will be tolerated.
    - Weapons are not allowed at the Festival.
    - Any items that can be used as a means to disturb the peace, endanger the safety of the crowd, and/or inflict damage to people and/or goods are prohibited.
    - All State and Local laws will be enforced.

55. During Officer Spry's cross-examination, Mr. Cocchini's counsel went down this entire list of Rules and Policies. Officer Spry confirmed that Mr. Cocchini had not violated any of them.

56. Upon information and belief, Pride Festival stationed volunteers at its event on June 3, 2023, who randomly monitored the conversations of individuals in attendance to make sure no

attendee was expressing any message that could be perceived as unsupportive of the gay and lesbian culture and lifestyle being promoted at this event. Those found to be out of sync with the gay and lesbian culture promoted by Franklin Pride, or those who merely espoused traditional Judeo-Christian views concerning the sanctity of marriage or human sexuality were reported to the police and ordered to leave.

57. As a means of enforcing its intolerance of anyone who adhered to a traditional, biblical view of marriage or human sexuality, Franklin Pride established a "check point" at the entrance to the event at which a volunteer for the event who checked the purses or handbags of those entering the event. Two ladies who came to attend the event were discovered to have bibles in their purses. Franklin Pride turned these women away and forbid them entry into the event because their bibles were characterized by Franklin Pride as "dangerous literature".

58. During the Franklin Pride event, some individuals gathered in a circle to quietly and peacefully pray. When they did so, they were quickly confronted by event coordinators and told to leave the property at once. Franklin Pride personnel shouted at these individuals: "You can go practice your constitutional rights across the street!"

59. Franklin Pride engaged in this policy of religious apartheid knowing that it had the full backing and police power of the City of Franklin.

V.
Causes of Action

COUNT I
42 U.S.C. § 1983
First Amendment Free Speech
Facial Content and Viewpoint
Discrimination

60. Plaintiff incorporates by reference herein the allegations contained in the preceding numbered paragraphs and does further allege as follows.

61. The actions of the Defendant City of Franklin, by arresting and criminally prosecuting the Plaintiff on a charge of criminal trespass, in the absence of any probable cause that he committed *any* criminal offense, was carried out as part of a *de facto* policy, practice, custom or usage under color of state law.

62. The actions of the City of Franklin effectively bestowed the full police power of the state on an independent actor, *i.e.* Franklin Pride, to carry out and enforce an arbitrary and discriminatory policy designed to punish individual free speech activity based solely on the content or viewpoint being expressed.

63. The City of Franklin falsely represented to the Plaintiff and other individuals who attended this public event on June 3, 2023, that Franklin Pride had "rented-out" the park and that this effectively transformed this city park into "private property".

64. In point of fact, Franklin Pride was at all times relevant, a private "permitee" who had merely been granted a permit to use the Park on the date in question.

65. The City of Franklin was not at liberty to alter the forum status on a temporary basis by granting a permit to an outside group to conduct an event that is open to the public. Traditional public fora remain open for expressive activity regardless of the government's intent.

66. The City of Franklin assigned its own police officers to enforce and carry out, under threat of arrest, the discriminatory policies of Franklin Pride and its practice of intolerance against others because they engaged in peaceful expression of views that Franklin Pride found inconsistent with its message of gay and lesbian culture and lifestyle.

67. The actions of the Defendant were committed with careless or reckless disregard and deliberate indifference to the Plaintiff's clearly established constitutional rights of free speech and assembly as protected by the First Amendment of the United States Constitution.

68. The Park at Harlinsdale Farm constitutes a public forum and is "the public square" and historically and traditionally reserved for free speech activities.

69. Restricting or treating religious viewpoints differently, or according them less protection as a matter of policy is viewpoint discrimination. See *Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 110-11 (2001) (holding that "quintessentially religious" views cannot be excluded by claiming to forbid religion as a subject matter); *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 831 (1995)("Religion may be a vast area of inquiry, but it also provides, as it did here, a specific premise, a perspective, a standpoint from which a variety of subjects may be discussed and considered."); accord *Ne. Pa. Freethought Soc'y v. Cty. of Lackawanna Transit Sys.*, 938 F.3d 424, 437 (3d Cir. 2019).

70. The unwritten policy and practice of the Defendant the City of Franklin vests in its Executive broad power to discriminate against speech on the basis of the content and viewpoints expressed.

71. Avoiding offense to gay, lesbian or transgender individuals is not an acceptable justification for religious viewpoint discrimination. See *Ne. Pa. Freethought Soc'y, 938 F.3d at 439; ac- cord Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (giving offense is a viewpoint).

72. As a proximate result of the Defendant's actions, the Plaintiff has suffered embarrassment, humiliation, mental anguish and emotional injury and other pecuniary loss for which he is entitled to an award of compensatory damages.

## COUNT II

### 42 U.S.C. § 1983
### Violation of the Equal Protection Clause
### Of the Fourteenth Amendment

73. Joseph Cocchini incorporates by reference herein the allegations contained in the

preceding numbered paragraphs and does further allege as follows.

74. The Equal Protection Clause of the Fourteenth Amendment protects each person against intentional, arbitrary government discrimination, whether based on a policy's express terms or improper implementation by government agents.

75. The Supreme Court has recognized successful equal protection claims brought by a "class of one," in which a plaintiff alleges that the government has intentionally and without a rational basis treated her differently from others who are similarly situated.

76. The Defendant has selectively enforced its policies, practices, customs or usages governing access to the Park at Harlinsdale Far, in Franklin, Tennessee, in an arbitrary and discriminatory manner as applied to the Plaintiff in this case. The effect of the Defendant's practice, custom and policy is to erect a double standard which discriminates against the Plaintiff based on the content and viewpoint of his speech activity.

77. The Defendant's actions, as set forth herein, served to deprive the Plaintiff of, and to infringe upon, his protected rights of freedom of expression as guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

78. As a proximate result of the Defendant's actions, the Plaintiff has suffered, and continues to suffer mental anguish, humiliation, embarrassment and emotional injury for which she is entitled to an award of compensatory damages.

### COUNT III

### Declaratory Relief
### 28 U.S.C. § 2201

79. Joseph Cocchini incorporates by reference herein the allegations contained in the preceding numbered paragraphs and does further allege as follows.

80. The Plaintiff alleges that an actual controversy exists between the parties sufficient to give rise to a need of declaratory judgment under 28 U.S.C.§ 2201, which provides as follows:

**28 U.S.C. § 2201. Declaratory Judgments**

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

81. Specifically, the Plaintiff seeks declaratory judgment to declare the policies, practices, procedures, customs and usages of the Defendants, as they relate to access and use of the county courthouse lawn, gazebo and curtilage, to be in violation of the First and Fourteenth Amendments of the United States Constitution, as applied in the instant case.

## Request for Relief

### *Declaratory Judgment*

1. An actual controversy exists between the parties as to whether the Defendants' policies, practices and customs with regard to their regulation of otherwise constitutionally protected free speech activity and assembly. Plaintiff alleges that the Defendant City of Franklin's policies, practices, customs and usage regarding control over access to its public grounds for purposes of free speech activity are enforced in an arbitrary manner and therefore violate the due process clause of the Fourteenth Amendment as well as the First Amendment. Plaintiff respectfully requests a declaratory judgment that the actions of the City of Franklin, Tennessee violate the federal constitutional rights of the Plaintiff.

### *Nominal Damages*

2. Plaintiff seeks an order awarding nominal damages for the Defendant's violation of his federal constitutional rights.

### *Compensatory Damages*

3. Plaintiff seeks an order awarding compensatory damages against the Defendant for violation of his federal constitutional rights in the amount of $2,000,000.00.

### *Punitive Damages*

4. Plaintiff seeks an order awarding punitive damages against the Defendant for violation of his federal and state constitutional rights in an amount to be determined by the jury.

### *Attorney's Fees and Costs*

5. Plaintiff seeks an order awarding the costs of this cause, including attorney's fees, costs and expenses under 42 U.S.C. § 1988.

### *Jury Demand*

6. Plaintiff demands a jury of six to hear and try this case.

### *Other Relief*

7. Plaintiff additionally requests such other relief as the Court deems just and proper.

Respectfully submitted,

**CRAIN LAW GROUP, PLLC**

By:

*/s/ Larry L. Crain*
Larry L. Crain, Tenn.Sup. Crt. # 9040
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Tel. (615) 376-2600
Email: Larry@crainlaw.legal


Emily A. Castro
Tn. Supr. Crt. No. 28203
5214 Maryland Way
Suite 402
Brentwood, TN 37027
Tel. 615-376-2600
Fax. 615-345-6009
Email: Emily@crainlaw.legal

*Attorneys for the Plaintiff Joseph Cocchini*